## Case No. 12,450.

### SCHENCK v. PEAY et al.

### PEAY v. SCHENCK et al.

[Woolw. 175; 2 Am. Law T. Rep. U. S. Cts. 111; 10 Int. Rev. Rec. 54; 1 Chi. Leg. News, 363; 11 Int. Rev. Rec. 12.] 1

Circuit Court, E. D. Arkansas. April. 1868.

COURTS — JURISDICTION IN RESPECT OF CITIZENSHIP OF PARTIES TO CROSS BILLS.

1. A cross bill will be sustained in the federal court, where a defendant is compelled to avail himself of that mode of defence, in order to protect himself from an injustice resulting to him from the position in which the cause stands, although the parties plaintiff and defendant, or some of them. are citizens of the same state; provided the defendants in such bill are already before the court, and are, as parties to the original bill, subject to its jurisdiction.

[Cited in Lowenstein v. Glidewell, Case No. 8,575; Eaton v. Calhoun, 15 Fed. 156; Jesup v. Illinois Cent. R. Co., 43 Fed. 496.]

1 [Reported by James M. Woolworth, Esq., and here reprinted by permission. 2 Am. Law T. Rep. U. S. Cts. 111, and 10 Int. Rev. Rec. 54, contain only partial reports.]

2. The federal court, in determining whether a bill is original and independent. or ancillary and auxiliary to a matter already before the court, does not confine itself to the line which, in chancery pleadings. divides original from cross and supplemental bills, but looks to the essence of the matter, and to principles adopted by it with reference to the question of its jurisdiction of the parties.

3. S., a citizen of Ohio, filed his bill against P. and B., citizens of Arkansas. As against P., he asked that his title to the real estate, the subject of the suit. should be quieted; and as against B., who claimed an interest in the premises, by a title the same as S.'s. he sought partition. P. filed his cross bill to have the title of both S. and B. declared void. Held, the cross bill is a proper mode of defence. necessary to a complete determination of the controversy brought before the court by the original bill; it is ancillary to the main cause and brings no new parties before the court; it is not liable to objection by demurrer.

[Cited in Bland v. Fleeman, 29 Fed. 673; Belding v. Gaines, 37 Fed. 820.]

4. The court of chancery will only with great reluctance and hesitation take the possession of property from a defendant having a clear legal title thereto, when the relief sought is founded on a disputed equity.

[Cited in Ruggles v. Southern Minn. R. Co.. Case No. 12,121; Overton v. Memphis & Little Rock R. Co., 10 Fed. 867.]

5. But it may be done under proper circumstances. There is no absolute rule against it.

[Cited in Ruggles v. Southern Minn. R. Co., Case No. 12,121.]

6. But if the party against whom the appointment of a receiver is sought has himself shown a fatal defect in the title under which he claims, he stands in a different position from a party whose legal title and possession are assailed. and who has not admitted the truth of the allegations against him.

7. Proceedings in pais, for the purpose of divesting one person of the title to real estate, and conferring it on another. must be shown to be in exact pursuance of the statute authorizing them, and no presumption will be indulged in their favor.

8. Where authority of this kind is conferred on three or more persons, in order to the validity of its exercise. all must participate or have an opportunity of participating, in the proceedings.

9. The action of two out of three commissioners. to all of whom a power is confided, cannot be upheld when the third took no part in, and knew nothing of. the transaction, and had no opportunity to exert his legitimate influence in determining the course to be pursued.

[Cited in Martin v. State. 23 Neb. 384, 36 N. W. 554.]

10. A statute provided a board of three tax commissioners to assess taxes on real estate, and in case of their non-payment. to sell and deliver possession of the property to the purchaser. Three commissioners were appointed, but only two acted or qualified. Held, there was no board of commissioners ever in existence. the two without the third not constituting a board. The intention of congress in requiring three was, that no less number should act.

[Cited in Union Pac. Ry. Co. v. Burlington & M. R. Co.. 3 Fed. 111.]

11. Congress may pass retroactive statutes, provided they are not ex post facto.

[See Albee v. May. Case No. 134.]

12. But in construing statutes, for which a retrospective effect is claimed. to give them such construction, the intention of the legislature in

that regard must either be expressly declared, or must appear by unavoidable implication.

[Cited in Brooke v. McCraken, Case No. 1,932; Tinker v. Van Dyke, Id. 14,058.]

13. A statute declaring, in the future tense, that a majority of a board of tax commissioners shall have full authority to transact the business of the board, and that no proceeding of the board shall be void or invalid in consequence of the absence of one of them, refers to the exercise of the power granted for the future to a majority of the board.

[Cited in Union Pac. Ry. Co. v. Burlington & M. R. Co., 3 Fed. 111.]

14. Such a statute does not cure defects in title arising out of past transactions.

15. Such act does not cure the defect of the non-existence of any tax board whatever.

This case came before the court upon a demurrer to the cross bill, and a motion on behalf of the plaintiff therein, for an injunction and a receiver. Schenck, a citizen of Ohio, filed the original bill against Peay and Bliss, citizens of Arkansas, in respect of some real estate in the city of Little Rock, in the last mentioned state, and alleged therein the following case: Section 5 of the act of June 7, 1862 (12 Stat. 422), provides, that the president of the United States, by and with the advice and consent of the senate, may appoint a board of three tax commissioners for each of the states then in insurrection against the federal government, whose duty it was to advance along with the federal armies into the insurrectionary districts, and assess upon the real estate therein due proportions of the direct tax imposed upon the state under the act of August 5, 1861. The federal forces having advanced into, and occupied the county of Pulaski, Hulings Cowperthwaite, Enoch H. Vance, and Daniel P. Tyler were duly appointed a board of direct tax commissioners for said state; but Tyler, one of the members of the board, did not qualify, nor enter upon the discharge of the duties of his office. The other two commissioners proceeded to assess the direct tax upon the lots in the county; and the time limited in the act for the payment of taxes having expired, they proceeded to offer the lots for sale at auction. The defendant Bliss became the purchaser of them, and was by said commissioners placed in possession. Bliss having sold and conveyed to Schenck an undivided fourth of the property so by him purchased, the latter in his original bill, asks, as against the former, a decree of partition of the property, and as against Peay, the original owner of it, that his title so acquired may be quieted by a decree of the court declaring his rights.

Peay answered this bill, and accompanied his answer by a cross bill against Schenck and Bliss. In both these pleadings he alleged, among other things, that one of the board did not join in the exercise of the authority conferred upon it by the statute, and that therefore these proceedings were void; and also, that there were other irregularities that invalidated the sale. These irregularities were, that the levy and apportionment of the tax was 50 per cent. in excess of the amount which the law authorized the commissioners to impose, and the attaching to the neglect to pay the taxes within the time limited certain penalties of an oppressive character. Fraud is also charged in the cross bill against Bliss and one of the tax commissioners. Depositions were taken, which were used upon the motion to support the allegations of the bill. The record tends strongly to establish the following facts upon this branch of the case: Cowperthwaite, one of the commissioners, came to Little Rock in the capacity of tax commissioner sometime in the winter of 1864–5. He and Vance opened an office and proceeded to apportion the direct taxes on the real estate within the corporate limits of the city. Shortly afterwards Bliss and Cowperthwaite became very intimate. Bliss had the freedom of the office of the commissioners, and access to the tax books and papers therein, a privilege oppressively denied to others. Cowperthwaite assumed the entire management of the business of the office. Vance exercised no authority in respect thereof. Cowperthwaite announced that owners of property must appear, not by their agents or attorneys, but in person, to pay their taxes; and he refused generally to receive the taxes except when they were tendered by the owners of the property in person. He also caused it to be generally understood that it would be regarded a military offence by the commanding general of the department, for any one to offer to pay the taxes on property when the owner was absent, engaged in the Rebellion, or was within the rebel lines. The defendant Peay in this case was in this predicament. At the time of the sale, Bliss was confessedly without means or property of his own, and he stated that the money to make the purchases was furnished him by other parties. In one instance, Bliss was requested to permit a third party to bid in, at the sale, without competition, a certain parcel of property for the owner, who was absent; to which request Bliss answered that he could not consent to do so, because he had agreed to bid it in for one of the tax commissioners. He was the chief bidder at the tax sales, his bids amounting to $27,690, for property valued at $209,000; the taxes upon which, after adding the penalty of 50 per cent. interest and costs, were $460.51. The yearly rents at that time were $27,500. No payment of any part of the bids was made by him, and yet, by virtue of writs of possession, issued to the marshal by the commissioners, he was placed in possession of the property purchased; and he paid his bids, or some of them at least, with the money which he realized from the rents of the property. Other facts were alleged, and appeared by the depositions, of illegal and oppressive action on the part of the commissioners toward property owners, and also gross partiality and favoritism towards Bliss. Enough has been stated to show why the dis-

cretionary power of the court, invoked upon the motions, was exercised in behalf of the plaintiff in the cross bill. Some time after these proceedings were had, congress passed the act of March 3, 1865 (13 Stat. 502), declaring that a majority of the board of tax commissioners shall have full authority to transact all business and to perform all duties required by law to be performed by such board; and that no proceeding of any board of tax commissioners shall be void or invalid in consequence of the absence of any one of said commissioners. The plaintiff in the cross bill asks therein a decree against both Bliss and Schenck, declaring the proceedings under which they claim the property void, and to restore him to the possession thereof.

Rice & Benjamin and Mr. Jonby, for Schenck and Bliss.

Watkins & Rose, Gallagher & Newton, and Stillwell, Wassell & Moore, for Peay.

MILLER, Circuit Justice. This is a bill in chancery brought by the complainant to quiet his title to certain real estate, as against Peay, and for partition thereof, as against Bliss. The title which he asks to have quieted and confirmed, is derived from a sale for taxes levied upon the real estate mentioned in the bill, under the act of congress of 1861, and the amendatory act of 1862, passed to enforce the collection of the tax in the insurrectionary districts. The defendant Peay files his answer and cross bill, when the proceedings under which the plaintiff claims were had, in which he states that he was, and still is, the true owner of the lots in controversy; that for several reasons detailed in the answer and cross bill, the proceedings were void and conferred no title on Bliss, the purchaser at the tax sale; and that the plaintiff, who purchased from Bliss, is therefore without title. He makes Bliss, as well as the plaintiff, a defendant to this cross bill, and prays that the tax sale may be declared void, and his title quieted, and the possession of the property, which had been delivered to Bliss by the tax commissioner, restored to him. He also prays for the appointment of a receiver pending the litigation, and for other relief.

The plaintiff and Bliss filed a demurrer to this cross bill, based on the proposition that the bill cannot be entertained in this court, because Peay and Bliss are both citizens of the state of Arkansas. If this were an original bill, brought by the plaintiff therein, as an independent measure of relief, it could not be sustained. Bliss was the sole purchaser, at the tax sale, of the property in dispute, and the certificates of sale are in his name, and Schenck, who alleges a right in himself to only an undivided fourth part, derived his claim by purchase from Bliss. It is clear, therefore, that as between Peay as plaintiff, and Bliss as defendant, both being citizens of Arkansas, no original and independent suit of this character can be maintained in the federal courts. On the other hand, it is insisted that Schenck, who is a citizen of Ohio, and the plaintiff in the original bill, asks, as against Bliss, merely a partition of the premises, and that Peay has no interest in this branch of the case; that the principal relief sought by him is a decree quieting his title as against Peay; and that in this branch of the case, Bliss's interests consist with the plaintiff's, and that it thence appears that the interests of Schenck and Bliss are equally adverse to Peay's. It is also said that the matter of the cross bill is strictly defensive, and necessary to be presented in order to bring before the court fully the defences of the plaintiff therein to the original bill. If this be true, the demurrer must be overruled, for it is the established doctrine of this court, that where a party defendant finds it necessary for his defence, and to prevent an injustice resulting to him from the position in which the case stands, he is at liberty to file a cross bill, if the case is pending in chancery, or an original bill, if the case is one at law, although the parties defendant to said bill, or some of them, may be citizens of the same state with himself. The only limitations to this principle are, that the bill must be necessary to the defence of the party filing the bill, and it must be filed against parties already before the court, and subject to its jurisdiction, either as plaintiffs or defendants in the original suit. Dunn v. Clarke, 8 Pet. [33 U. S.] 1; Clarke v. Mathewson, 12 Pet. [37 U. S.] 164; Cross v. De Valle, 1 Wall. [68 U. S.] 1. And in determining whether a bill is original and independent, or is ancillary and auxiliary to a matter already before the court, we are not confined to the line which, in chancery pleadings, divides original bills from cross bills and supplemental bills, but may look to the essence of the matter, and to principles which, as regards parties, the federal courts have adopted in reference to their jurisdiction. Minnesota Co. v. St. Paul Co., 2 Wall. [69 U. S.] 632; Freeman v. Howe, 24 How. [65 U. S.] 450.

The main question raised by the original bill is the validity of the title conferred by the tax sale, and the relief sought is to have that title quieted and confirmed. The cross bill refers only to matters connected with the validity of the same tax title, and prays as its sole relief, to have it set aside and declared void. In reference to the partition, the cross bill is silent, and the relief asked concerning a receiver is purely incidental to the progress of the suit, and could be had without the aid of the cross bill on mere petition. It seems to us, therefore, that the cross bill is essentially a mode of defence appropriate to the case; that it is necessary to a complete determination of the controversy brought before the court by the original bill; that it is ancillary to the main cause; and that, as it brings no new parties before the

court, it is not liable to the objection taken by the demurrer. The demurrer is therefore overruled.

The application for the appointment of a receiver is urged upon the ground that Bliss is insolvent, except as to the property held under these tax sales; that the property in controversy is covered with valuable buildings, is located in the city of Little Rock, and is paying large rents, of which Bliss is the recipient; that the title of defendants is not only void in law, but that the tax proceedings were accompanied by such positive acts of fraud on the part of Bliss and one of the tax commissioners, that, for these reasons alone, the sale should be held to be void. These allegations of the cross bill are well supported by depositions taken in the suit. In reply to this, it is urged that the defendants in the cross bill are in possession of the property, under the legal title; that the questions of fraud remain to be investigated, and are denied generally by affidavit; that the defendants have not yet answered, nor been required to answer, the cross bill, because the demurrer has thus far remained undecided; that it is contrary to the rules of courts of equity to appoint a receiver when the defendant is in possession, under the legal title; and that the parties should be permitted to remain in statu quo until the case is decided upon the merits. It is undoubtedly true that, where the relief sought is founded upon a disputed equity, a court of chancery will with great reluctance and hesitation take the possession from a defendant holding the clear legal title. But under proper circumstances this may be done, and there is no absolute rule against it. Hugonin v. Basely, 13 Ves. 105. And if the motion before us presented a case where the legal title was in the defendants, and could be declared void only by reason of fraud in the sale, we should hesitate very much before appointing a receiver. The defendant in the cross bill is himself plaintiff in the original bill, and in that bill has set out in detail the facts on which his title depends, and has on that statement asked the judgment of this court as to its validity. If in this statement he has shown that the proceedings, under which alone he claims title, have conferred no title, he stands in a different attitude from a defendant whose legal title and possession are assailed, and who has admitted nothing which tends to prove the truth of the matters alleged against them.

We are of opinion that the plaintiff in the original bill has disclosed a fatal defect in his own title. The act of June 7, 1862 (12 Stat. 422), after directing that the president shall declare, on or before the 1st day of July thereafter, in what states or parts of states the insurrection exists, authorizes him to appoint three persons for each of said states, who shall constitute a board of tax commissioners for said state. It is made the duty of these commissioners, as the federal armies shall advance into the insurrectionary limits, to assess upon the real estate within the districts, as they are successively occupied, the portion of the direct tax imposed on the state by the act of 1861 which that real estate should properly bear. The entire proceeding for the collection of this tax, including the sale and delivery of possession to the purchaser of the lands on which it was assessed, was confided by the law to this board. The original bill alleges the proclamation of the president including Arkansas as an insurrectionary state; the occupation by the federal forces of the county of Pulaski, in which the lots in controversy are located; and the appointment, by and with the advice and consent of the senate, of Hulings Cowperthwaite, Enoch H. Vance, and Daniel P. Tyler, as a board of direct tax commissioners for the state of Arkansas; and then adds, "that said Tyler, one of the members of said board of tax commissioners, appointed as aforesaid, did not qualify and enter upon the discharge of the duties of his office until some time after the sale of the real estate hereinafter mentioned and described for taxes." It then goes on to allege the assessment of the direct tax on the lots in question by the other two commissioners, their sale of the lots to Bliss, and that after his purchase they put him in possession. We understand it to be well settled that where authority of this kind is conferred on three or more persons, in order to make its exercise valid, all must be present and participate, or have an opportunity to participate, in the proceedings, although some may dissent from the action determined on. The action of two out of three commissioners, to all of whom was confided a power to be exercised, cannot be upheld when the third took no part in the transaction, and was ignorant of what was done, gave no implied consent to the action of the others, and was neither consulted by them, nor had any opportunity to exert his legitimate influence in the determination of the course to be pursued. Such is the uncontradicted course of the authorities, so far as we are advised, where the power conferring the authority has not prescribed a different rule. 2 Kent, Comm. 293, note a. 633, and authorities cited there, note b; Com. v. Canal Com'rs. 9 Watts, 466; Green v. Miller, 6 Johns. 39; Kirk v. Bell, 12 Eng. Law & Eq. 385; Crocker v. Crane, 21 Wend. 211; Doughty v. Hope, 1 N. Y. 79; Id., 3 Denio, 252, 253. The case before us goes even beyond this; for according to the statement of the bill, there never was a board of commissioners in existence until after the proceedings in regard to his title were completed. The law required three commissioners. A less number was not a board, and could do nothing. The third commissioner for Arkansas, although nominated and confirmed, did not qualify or enter upon the duties of his office until after the sale of the lots to the defendants. There was therefore no board of commissioners in existence authorized to assess the tax, to receive the money, or to sell the property. If congress

had intended to confide these important functions to two persons, it would not have required the appointment of the third. If it had been willing that two out of the three should act, the statute could easily have made provision for that contingency, as has since been done by the act of 1865.

Nothing is better settled in the law of this country than that proceedings in pais for the purpose of divesting one person of title to real estate, and conferring it on another, must be shown to have been in exact pursuance of the statute authorizing them, and that no presumption will be indulged in favor of their correctness. This principle has been more frequently applied to tax titles than to any other class of cases. We cannot presume, therefore, that congress intended that less than three commissioners could conduct these proceedings, and still less that they intended that, in regard to the important matters confided to the board, any action should be taken when there was no legally organized board in existence.

It is said, however, that this defect is cured by section 3 of the act of March 3, 1865 (13 Stat. 502), which declares, "that a majority of a board of tax commissioners shall have full authority to transact all business and to perform all duties required by law to be performed by such board, and no proceeding of any board of tax commissioners shall be void or invalid in consequence of the absence of any one of said commissioners." As this act was passed after the proceedings relied on by complainant as conferring title on him, we must give it a retroactive effect, in order to reach the case.

The law concerning retrospective statutes has been so much discussed in this country and in England, that it would be an affectation of learning to cite authorities upon the subject. It is undoubtedly within the power of congress to pass retrospective statutes which do not come within the definition of ex post facto laws. As this prohibition of the constitution relates exclusively to criminal laws, it does not affect the power of congress to pass such a law in regard to the matter before us. But when we are called upon to construe statutes claimed to be retroactive, the rule is firmly settled that we can only give them that effect when there is something on their face putting it beyond doubt that the legislature so intended; or, to express it in other words, the legislature must have expressly declared the statute to be applicable to past transactions, or the intent must appear by an unavoidable implication. No such inference can be drawn from the statute before us. The first declaration is in the future tense, that a majority of the board shall have authority to transact business, and the second branch of the provision, that no such proceedings shall be void or invalid in consequence of the absence of any one of the commissioners, has very natural reference to the exercise of the power granted for the future to a majority of the board. It is not by such language as this that titles defective on account of past transactions are cured. The language of a statute which so violates the rule of policy against retrospective laws, as in effect to take the title from one man and give it to another, must be much more clear and explicit in stating that intent than the one under consideration. No fair and natural construction of its terms will justify attaching to it such an effect. But if the section we have cited could be held to have a retroactive effect, the case before us does not come within its purview; for it requires a board of tax commissioners to be in existence, and then provides that a majority of that board can act. We have already shown that, according to the allegations of the bill, no such board was in existence; that none had ever been organized when the two commissioners assessed the tax and sold the defendant's property. The act of 1865 does not pretend to hold that the sale shall be valid where there is no board in existence, where one of the commissioners never qualified, and where, consequently, no authority was ever vested in three which might be exercised by two.

We are therefore of opinion that the original bill shows on its face that the complainant has no title to the property which he claims, of which he is in possession, and from which he has for several years received the rents and profits. And as this showing accompanies the assertion of the legal title on which he relies to defeat the appointment of a receiver, that title can have no such effect. As the circumstances disclosed in the depositions are all such as should incline us to use the discretionary power of the court in favor of the appointment of a receiver, the order will be made for such appointment; and also for an injunction restraining the defendants in the cross bill, Schenck and Bliss, from interfering with the receiver, or exercising control over the property, until the further order of the court.

[NOTE. Subsequently, this cause came on for final hearing, and a decree was entered for complainant in the cross bill. Case No. 12,451. An appeal was then taken to the supreme court, but was finally abandoned, after the judgment of that court in Bennett v. Hunter, 9 Wall (76 U. S.) 326. A motion was afterwards made by the defendants Schenck and Bliss for an order directing the receiver to turn over to them the possession of the property, and the rents in his hands, on the ground that the party who appeals or files a supersedeas bond is entitled to have delivered to him any money or property in the hands of a receiver, or in the custody or control of the court. The motion was overruled. Case No. 12,451.]