BLYTHE et al. v. HINCKLEY et al.

(Circuit Court, N. D. California. December 6, 1897.)

No. 12,144.

1. EQUITY—INTERLOCUTORY AND FINAL DECREE—CROSS BILL.
   Where a cross bill seeks affirmative relief with respect to matters germane to the original suit, and the controversy takes such a shape that a complete and final determination of the whole case as to all the parties to the original suit may be had upon the lines of a cross bill, then it seems a final decree may be entered on the cross bill.

2. SAME.
   A decree entered pursuant to an order pro confesso on a cross bill is not final, but interlocutory, where it leaves undetermined, as between the parties to the original and supplemental bills, the question of the legal ownership of property in dispute, and where, also, it is still necessary to refer the cause to a master for an accounting in respect to rents and profits.

3. SAME—MOTION TO DISMISS—JURISDICTION.
   It seems that no complete and final decree upon the whole case can be entered pursuant to an order pro confesso on a cross bill while there is pending and undetermined a motion to dismiss the original suit for want of jurisdiction.

4. SAME—DEATH OF PARTY—PRESUMPTIONS.
   Where a husband who was a co-defendant with his wife died pending the suit, and a decree was thereafter entered, held, that it could not be presumed in support of such decree that he had no other interest in the suit than as her husband.

5. SAME—VACATING DECREE AFTER TERM.
   Where a decree entered pursuant to an order pro confesso on a cross bill is clearly interlocutory in character, it remains within the control of the court, and may be reconsidered and modified or set aside at the subsequent term.

6. SERVICE OF SUBPŒNA.
   Delivering a copy of a subpœna to a person described as "an adult person who is a resident in the place of the abode" of the defendant is not a compliance with Equity Rule 13, which, in default of actual personal service, requires the delivery of a copy at the defendant's dwelling house or usual place of abode, "with some adult person who is a member or resident in the family."

7. SAME—DEFECTS CURED BY DECREE—PRESUMPTIONS.
   The rule as to the presumptions in favor of the validity and regularity of proceedings had before judgment or decree is applicable only in cases of collateral attack, and cannot be invoked to cure defects in the service of process, upon an application, in the same suit, to set aside a default decree, in order to permit a defense upon the merits.

8. DEFAULT DECREE—SETTING ASIDE.
   A decree entered pursuant to an order pro confesso on a cross bill will be set aside where it appears that there were serious irregularities in the service of the subpœna on the cross bill, and that such bill was amended, between the date of the order pro confesso and the date of the decree, by withdrawing certain allegations, and striking out the name of another defendant.

9. PRACTICE—ENTRY OF ORDERS—NEGLIGENCE OF CLERK.
   Under the rules of practice, counsel are entitled to rely upon the court officers to properly record in the minutes proceedings had in open court;

and a default in making an entry cannot be used to the prejudice of parties who rely on the integrity of the official records.

10. OPENING DEFAULT DECREE.

A subpœna issued upon a cross bill was served upon the counsel of the original complainants who were nonresidents. They thereupon specially appeared to contest this substituted service, and moved to quash the subpœna. There was pending at the same time, a motion made by them to dismiss their suit as to the cross complainant. *Held,* that pending these motions no binding decree could be entered against them by default on the cross bill.

11. TERMS OF COURT—VACATING ORDER OF ADJOURNMENT.

After the court had adjourned sine die, an order was made vacating the order of adjournment, and opening the court for business. Thereupon an order was made permitting a defendant to file a petition and affidavits in support thereof to set aside a decree, and continuing the hearing thereof until the ensuing term. Thereafter the opposite party moved to expunge these entries, on the ground that the court had no power to reopen for the transaction of business before the next term. *Held* that, as the business transacted was such as might have been done before the judge at chambers, the moving party was not prejudiced, and the motion would be denied.

This is a suit in equity, to quiet the title of the complainants to certain real property in California, as against the claim of the defendants to an adverse estate and interest in the premises.

The suit was commenced December 3, 1895, by John W. Blythe, a citizen of Kentucky, and Henry T. Blythe, a citizen of Arkansas, against Florence Blythe Hinckley, Frederick W. Hinckley, and the Blythe Company, citizens of California. The bill of complaint alleges that the complainants are the owners and tenants in common with each other of certain lands described in the bill, situated in the city and county of San Francisco, and in the county of San Diego, Cal.; that said lands are of the value of $3,000,000 and upward; that the defendants claim that they have or own adversely to complainants some estate, title, or interest in said lands, but that the claim is false and groundless, and without warrant of law. December 12, 1895, the complainants filed an amended bill of complaint, containing additional allegations, to the effect that the defendant the Blythe Company was a corporation organized and existing under the laws of the state of California, having its office and principal place of business at the city and county of San Francisco, in said state; that the parcel of land described as situated in the city and county of San Francisco is of the value of $3,000,000 and upward; that Frederick W. Hinckley was the husband of Florence Blythe Hinckley; that each of the defendants is a citizen of the state of California, and a resident in the Northern district of the state; and that, at the time of the commencement of the suit, neither of the parties was in possession of the lands described in the bill of complaint. A summons was issued upon this complaint, and on December 21, 1895, was served upon George W. Towle, Jr., the attorney for the defendant the Blythe Company, and personally served upon the defendants Florence Blythe Hinckley and Frederick W. Hinckley. December 28, 1895, the Blythe Company filed an answer to the amended bill. The answer contained a cross complaint against the complainants, in which it was alleged that the Blythe Company was the owner of the land described in the amended bill of complaint, and that the claim of the complainants thereto was false and groundless, and without warrant of fact or law. December 30, 1895, Florence Blythe Hinckley and Frederick W. Hinckley appeared specially, by leave of court, and moved to quash the service of summons upon them, on the ground that the suit was one that is only cognizable in a court of equity, and the proper process to be issued in such a suit to be served on the defendants was the process of subpœna. The motion was granted February 10, 1896, and the service of summons upon the Hinckleys was vacated and discharged, and the summons quashed. August 27, 1896, the Hinckleys again appeared specially by leave of court, and moved to dismiss the action, under rule 66 of this court, on the ground that the complainant had not prosecuted the action with due diligence,

and had failed to have process of subpœna issued within 90 days after filing the bill of complaint. This motion was denied upon a showing by complainants' counsel that he was not aware of the existence of rule 66. A subpœna was thereupon issued, and personally served upon the Hinckleys on September 28, 1896, and on November 2, 1896, they entered a general appearance to the amended bill of complaint.

On December 14, 1896, the Hinckleys filed a plea in bar to the action, alleging that the statement in the amended bill of complaint that the complainants were the owners, as tenants in common with each other, of the lands therein described, was based solely upon the claim that they were the lawful heirs and next of kin of Thomas H. Blythe, deceased, and that upon his death they inherited and acquired, by succession, the title to the real property described in the bill of complaint. The plea alleged that Thomas H. Blythe died, intestate, in San Francisco, April 4, 1883, and that at and before his death he was a citizen of the United States, and the owner of the real estate in controversy. The plea then proceeds to set forth in detail the probate proceeding in the superior court of San Francisco in the estate of Thomas H. Blythe, deceased, and the proceedings in the superior court upon the petition of Florence Blythe, under the provisions of section 1664 of the Code of Civil Procedure of the state, wherein, on October 22, 1890, it was adjudged and decreed that Florence Blythe (afterwards Florence Blythe Hinckley) was the child and daughter of Thomas H. Blythe, deceased, and that he legally adopted her as his lawful child and heir, and that she was the sole owner of all the estate of Thomas H. Blythe, deceased, of every name, nature, and description, wherever situated, and that she was his sole surviving and only lawful heir, and was the only person entitled to have and receive distribution of his estate. The plea also recited proceedings on appeal to the supreme court of the state, and the judgment of that court affirming the judgment of the superior court; also the proceedings in the superior court resulting in a decree distributing the estate of Thomas H. Blythe to Florence Blythe Hinckley; an appeal from that decree to the supreme court of the state; and the affirmance of the decree by that court. The plea further alleged that on December 4, 1894, and prior to the commencement of this suit, and prior to the filing of the amended bill of complaint, the possession of the whole of the real property had, under the decree of distribution, been given and delivered to Florence Blythe Hinckley, and that she had, and ever since that time continued to have, the possession of the same. Before the plea was heard, the complainants, on January 14, 1897, filed a second amended and supplemental bill, referring only to the real estate situated in the city and county of San Francisco, and containing many allegations not contained in previous bills. It is alleged that Boswell M. Blythe, a citizen of California, and a resident at Downey, in California, was one of the heirs at law of Thomas H. Blythe, and was entitled to have some share in the estate adjudged and decreed to him; but, by reason of his citizenship, he could not be joined as complainant in the bill, and he was therefore made a defendant, that his rights and interests might be protected in the final decree. This amended bill also set forth the substance of the proceedings in the state courts with respect to the estate of Thomas H. Blythe, substantially as contained in the plea of Florence Blythe Hinckley and Frederick W. Hinckley, and alleged, further, that the defendant Florence was born in England, the bastard child of an unmarried woman; that at the time of her birth her mother was a resident of England, and a subject of Victoria, queen of Great Britain and Ireland; that she remained in England at all times until after the death of Thomas H. Blythe; that she came to California for the first time in 1883; that she was then an infant, about 10 years of age, ineligible to become a citizen of the United States, and, when she arrived in California, she was a nonresident alien. The bill then refers to the treaty of 1794 between Great Britain and the United States, sections 17 and 22 of article 1 of the constitution of the state, and sections 671, 672, and 1404 of the Civil Code of California, relating to the rights of foreigners and aliens to take real estate by succession as heirs at law of deceased citizens of California; and the bill alleges, in various forms, that the superior court of San Francisco was without jurisdiction to adjudge or decree that Florence Blythe was capable of inheriting the real estate as heir at law of Thomas H. Blythe.

The bill further alleges that, at the date of the filing of the original bill, neither party was in possession of the land situated in San Francisco, but that the same was in the hands and possession of the public administrator of the city and county of San Francisco; that on October 26, 1891, the superior court granted a decree of distribution, wherein all the real property belonging to the estate of Thomas H. Blythe, deceased, was distributed to Florence Blythe Hinckley, and that on December 4, 1891, she secured possession of the same; that said real property is all of it built upon, being covered with stores and tenements which are much used and in great demand as places of business, and which are all occupied by tenants, and bring in a monthly rental of about $12,000, which the defendant Florence receives each month; that on January 18, 1896, the superior court granted a final decree of distribution, wherein the residue of said estate remaining in the hands of the public administrator, amounting to $89,812.94, being the rents accrued from the real property, was distributed to the defendant Florence. The prayer of the bill is that the title of the complainants to the real estate be quieted, and that they be let into possession thereof; that, as to the defendants Florence Blythe Hinckley and Frederick W. Hinckley, her husband, an account of the rents and profits which had been received, or which might thereafter be received, up to the final hearing by the defendant Florence, or any one claiming under her, be taken, and, upon the coming in of the report of the value thereof and the confirmation of the report, be adjudged and decreed to the complainants.

On February 1, 1897, the Blythe Company filed an answer to this second amended and supplemental bill, in which the material allegations of the supplemental bill were placed in issue, and the heirship of the grantors of the Blythe Company to the estate of Thomas H. Blythe, deceased, fully set forth. Thereupon the defendant Florence Blythe Hinckley, by leave of court, appeared specially, and on February 15, 1897, made two motions: (1) A motion to strike from the files the last-mentioned pleading of the Blythe Company, on the grounds, among others, that it could not be determined therefrom whether it was intended as an answer or a cross bill, or both an answer and a cross bill; that, if it was intended as a cross bill, no defendants were named or designated; that it contained no prayer for a subpœna, or for any process; and that it was not signed by counsel or by the Blythe company. (2) A motion to strike out certain portions of the answer (in the event the first motion should be denied), on the ground, among others, that, in the matter alleged, it was attempted to introduce a new controversy into the suit, and one wholly distinct and separate from that mentioned and set forth in the bill, and a controversy between the defendant the Blythe Company and the defendant Florence Blythe Hinckley, who were citizens of the same state. The order of the court granting to the defendant Florence Blythe Hinckley leave to appear and make these two motions contained the further order of the court "that no further appearance in respect to said pleading, so filed by said Blythe Company need be entered by said defendant Florence Blythe Hinckley until 10 days after her solicitor herein is served with written notice of the decision of the court on her said motion, and then only if said motion should not be sustained in whole or in part; and, for like cause, said defendant is hereby granted ten days after her solicitor herein is served with written notice of the decision of her said motion in which to enter a general and further appearance to said pleading, and to file any further motion, plea, demurrer, or answer in said suit in relation thereto, and then only if said motion should not be sustained." On the same day that the foregoing proceedings were had with respect to the pleadings of the Blythe Company, the defendant Florence Blythe Hinckley made a motion to dismiss complainants' suit, on the ground that the court had no jurisdiction of the cause of action stated in the bill of complaint, and because the defendant Boswell M. Blythe and the defendant Florence Blythe Hinckley were citizens of the same state; that Boswell M. Blythe was interested wholly on the same side of the controversy in the suit with the complainants, and was therefore to be arranged and regarded as one of the complainants in the suit. On February 16, 1897, the Blythe Company, by leave of court, filed a cross complaint, in substance the same as the answer of the corporation to the second amended and supplemental bill, but alleging the death of the defendant Frederick W. Hinckley since February 1, 1897, making John W.

Blythe, Henry T. Blythe, Boswell M. Blythe, and Florence Blythe Hinckley defendants, and praying that the usual process of subpœna be issued and directed to the defendants, and for a decree in favor of the Blythe Company for the possession of the lands described in the cross complaint, together with the rents, issues, and profits thereof, and that the complainants, John W. Blythe and Henry T. Blythe, and the defendants Boswell M. Blythe and Florence Blythe Hinckley, and all persons claiming by or through them, or any of them, be enjoined and forever restrained from asserting title to or interest in said lands, or any thereof, adverse to the interest, ownership, and title of the cross complainant. February 26, 1897, the complainants, John W. and Henry T. Blythe, obtained an order from the court dismissing the suit against the Blythe Company; but on the following day, on the application of the solicitor for the Blythe Company, this order was vacated and set aside, but without prejudice to a renewal of the motion by complainants to dismiss as to the said Blythe Company at any time should they be so advised in the premises. Subpœnas were issued on the cross complaint, and on March 1, 1897, served on the defendant Florence Blythe Hinckley, in the manner hereinafter described, and the others returned unserved as to the complainants, John W. and Henry T. Blythe.

On March 4, 1897, the attorney for the Blythe Company stipulated that the complainants need not file their replication to the answer which the Blythe Company had interposed to the complainants' second amended and supplemental bill until the expiration of 10 days after notice had been given by the Blythe Company that the replication was required. He also stipulated that the complainants need not plead or move to the cross bill filed by the Blythe Company until further notice from the Blythe Company. Subsequently an alias subpœna was issued and order served upon the solicitors for the complainants, and this service was accordingly made April 9, 1897. The service of the subpœna on the complainants to appear and answer the cross bill was accompanied by a notice from the attorney for the Blythe Company to the same effect, in accordance with the terms of his stipulation of March 4, 1897. The subpœna served upon Florence Blythe Hinckley was returnable on April 5, 1897, and the one served on the solicitors of John W. and Henry T. Blythe was returnable May 3, 1897. On April 6, 1897, the solicitor for the Blythe Company entered in the rule book a rule taking the cross bill pro confesso as to Florence Blythe Hinckley for not appearing to said bill; and on May 4, 1897, a similar order was entered in the rule book, taking the cross bill as confessed against John W. and Henry T. Blythe. On April 28, 1897, or seven days prior to the entry of the last-mentioned order, the solicitors for the complainants served a notice on the attorney for the Blythe Company that on May 3, 1897, they would move the court to set aside and rescind the order entered on February 27, 1897, which vacated and set aside the previous order of February 26, 1897, dismissing the suit as to the Blythe Company, and would move the court to reinstate and give force and effect to said prior order of dismissal, and that the suit stand dismissed as to the Blythe Company, and would also move the court to set aside the order of April 8, 1897, providing that the subpœna issued upon the cross bill be served upon the complainants by delivering a copy to their solicitors. On May 3, 1897, the complainants petitioned the court for leave to appear specially for the purpose of making these motions, and the petition was thereupon granted, and it was further ordered "that no further appearance in respect to said pleading so filed by said Blythe Company need be entered by said complainants John W. Blythe et al. until 10 days after the solicitors of said complainants are served with written notice of the decision of the court upon said motion, and then only if said motion should not be sustained in whole or in part. And, for the like cause, said complainants are hereby granted 10 days after their solicitors are served with written notice of the decision upon their said motion in which to enter a general and further appearance to said pleading, and to file any further motion, plea, demurrer, or answer in said suit in relation thereto, and then only if said motion should not be sustained; and it is further ordered that a copy of this order be served upon the solicitor for said the Blythe Company herein." It appears that a copy of the order was served as directed, and that the motions were called on the motion calendar of the court on May 3, 1897; but, on the application of

the attorney of the Blythe Company to the solicitors for the complainants, the latter moved the court to continue the motions to May 10, 1897, and they were accordingly so continued. On May 10, 1897, these motions were again called on the motion calendar, and the motion to dismiss the suit as to the Blythe Company was heard, the solicitors for the complainants appearing and submitting argument in its support, and the attorney for the Blythe Company appearing and submitting argument in opposition thereto; and thereupon leave was granted to both sides to file briefs. The motion to quash the substituted service was continued. On the same day, to wit, May 10, 1897, the solicitor for the Blythe Company filed amendments to his cross bill, and obtained an order from the court that the cross bill should stand amended in the manner specified, and the several parts specified be stricken therefrom and withdrawn. The changes made by these amendments in the cross bill consisted in the abandonment and withdrawal of all reference to certain property situated in another judicial district of the state, described in the cross bill as originally filed, and the dismissal of the cross bill against the defendant Boswell M. Blythe. On June 1, 1897, the complainants, by leave of court, amended their second amended and supplemental bill, by striking out the name of Boswell M. Blythe as a party defendant, but leaving the allegation as to his being an heir of Thomas H. Blythe, deceased, remain, with this explanation: "But, as the said Boswell M. Blythe resides out of and beyond the jurisdiction of the court, your orators state the facts concerning him." No new rule taking the cross bill as amended pro confesso was entered in the rule book; but on July 1, 1897, the solicitor for the Blythe Company filed his own affidavit, showing that the subpœna issued on the cross bill was served on Florence Blythe Hinckley in the Northern district of California on the 1st day of March, 1897; that no appearance had been entered by or for her, and the time for her appearance had not been enlarged; that a decree pro confesso had been entered in the rule book; that the alias subpœna issued upon the cross bill was served pursuant to the order of the court upon John W. and Henry T. Blythe, returnable on the first Monday of May, 1897; that no appearance had been entered by or for them, and the time for their appearance had not been enlarged; that a decree pro confesso had been entered in the rule book. Thereupon an order was entered by the court that the cross bill of the Blythe Company be taken pro confesso, and that the judgment and decree of the court be entered accordingly. On July 3, 1897, a decree in conformity with this order was entered in favor of the Blythe Company, and the court soon after adjourned for the term. At the time this decree was entered, there were pending before the court undetermined the following motions: (1) The motion of the defendant Florence Blythe Hinckley to strike from the files the answer of the Blythe Company to the complainants' second amended bill. (2) The motion of the same defendant to strike out certain portions of the answer of the Blythe Company. (3) The motion of the same defendant to dismiss complainants' suit. (4) The motion of the complainants to dismiss the suit as to the Blythe Company. (5) The motion of the complainants to quash the substituted service of the subpœna issued upon the cross bill. The first, second, third, and fourth motions had been argued and submitted; the last briefs having been filed on the first and second motions on April 30, 1897, on the third motion on May 22, 1897, and on the fourth motion on June 25, 1897.

On July 7, 1897, Florence Blythe Hinckley filed a petition to have the judgment of July 3, 1897, set aside and vacated, on the ground that she had never been served with any process or received a copy of any process issued upon said cross bill; that she had never seen or received said cross bill or a copy thereof; that no cross bill or any copy thereof, or any process or any copy of any process, had ever been delivered to her or left at her dwelling house or usual place of abode with any adult person who was ever a member or resident in her family. The petition was supported by the petitioner's affidavit, together with the affidavits of her attorney and counsel, to the effect that prior to July 6, 1897, they had no knowledge that a subpœna or any other process had ever been issued upon the cross bill filed by the Blythe Company; that they had no knowledge or information that a default had been entered against Florence Blythe Hinckley, or that an order had been made that the cross bill should be taken pro confesso. The complainants also ap

peared, and moved to set aside the decree, on the ground that certain motions submitted by them were pending undetermined at the date of the decree. Upon this showing the order of adjournment for the term entered on July 3, 1897, was on July 7, 1897, set aside and vacated, and the defendant Florence Blythe Hinckley permitted to file her petition and affidavits in open court; and her counsel thereupon moved that the decree of July 3, 1897, against her, and in favor of the Blythe Company, be vacated. The hearing of this motion was then continued until the first day of the next term, and, pending such continuance, all proceedings upon the decree of July 3, 1897, were stayed until the further order of the court. The first day of the next term was July 12, 1897, when the hearing of the motion was continued to August 2, 1897, and reached on August 3, 1897. Preliminarily to hearing the motion to vacate the decree of July 3, 1897, a number of objections were interposed by counsel for the Blythe Company: (1) That the moving parties had not appeared in court in accordance with the rules of chancery practice; (2) that, by reason of the expiration of the term, the decree had become final, and the Blythe Company dismissed from further attendance upon the court. (3) The Blythe Company had not been brought into court by any order, writ, or process of the court. With respect to the first objection, I think the petition presented to me by the defendant Florence on July 7, 1897, to set aside and vacate the decree of July 3, 1897, and the order entered upon that petition, permitting her to file the petition and affidavits, and continuing the hearing of the same until the first day of the next term, is a substantial compliance with the rules of equity practice. The other objections will be disposed of in the determination of the defendants' motion.

S. W. & E. B. Holladay (L. D. McKissick and Jefferson Chandler, of counsel), for complainants.

W. H. H. Hart (Robert Y. Hayne, Garber, Boalt & Bishop, Aylett R. Cotton, and W. W. Foote, of counsel), for defendant Florence Blythe Hinckley.

George W. Towle, Jr. (E. S. Pillsbury and Lorenzo S. B. Sawyer, of counsel), for defendant Blythe Co.

MORROW, Circuit Judge (after stating the case as above). The first question is as to the character of the decree entered by this court on July 3, 1897. If it was an interlocutory decree, all the parties are still in court, awaiting the final determination of the cause, and the court retains its control over the decree, with power to reconsider and modify or set it aside, as the rights of the parties may require. Fourniquet v. Perkins, 16 How. 82. If it was a final decree, the parties have undoubtedly been dismissed, and they can only be brought back, and the decision reviewed, by certain well-established rules of procedure. Fost. Fed. Prac. §§ 350–359.

The bill filed by the Blythe Company has been called a "cross bill," and it will be so treated in disposing of the question now under consideration. As an original bill it would probably not be within the equity jurisdiction of this court, for the reason that it does not appear that the Blythe Company was in possession of the premises is controversy when the bill was filed, or that both parties were out of possession. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495; Whitehead v. Shattuck, 138 U. S. 147, 11 Sup. Ct. 276; Railroad Co. v. Goodrich, 57 Fed. 880. The object of a cross bill is either (1) to bring before the court new matter in aid of the defense to the original bill; (2) to obtain a discovery of facts from the plaintiff or co-defendant in aid of the defense to the original bill; (3) to obtain

some affirmative relief as to the matters in issue in the original bill; or (4) to obtain full relief for all parties, and a complete determination of all controversies which arise out of the matters charged in the original bill. The cross bill is auxiliary to the original suit, and a graft and dependency upon it. Cross v. De Valle, 1 Wall. 5, 14; Rubber Co. v. Goodyear, 9 Wall. 807, 809; Dows v. City of Chicago, 11 Wall. 108, 112; Slason v. Wright, 14 Vt. 208. While a decision or decree upon a cross bill seeking merely a discovery is obviously not a final decree, it is a question not involved in this suit, and requires no further consideration.

It is contended, however, in support of the motion to vacate the decree of July 3, 1897, that no decree rendered upon a cross bill can, in the nature of things, be other than interlocutory; and Ayres v. Carver, 17 How. 594, and Ex parte Railroad Co., 95 U. S. 221, are cited as establishing this doctrine. Are those cases authority to that extent? In the first case the original bill charged that the complainant had taken the necessary steps to purchase certain lands acquired by the government under a treaty with the Chickasaw Indians; that the register and receiver of the land office where the lands were subject to entry would not permit him to make the purchase, but allowed the defendants to enter and purchase the several tracts in sections and subdivisions; that the defendants had notice of the rights and equities of the complainant at the time of the purchase. The prayer of the bill was that the complainant be permitted to enter and purchase the land, or that the defendants be decreed to convey the same to the complainant, and to deliver up the possession. Two of the defendant filed cross bills against the complainant and co-defendants, charging that they had obtained a title to the several tracts in controversy, or to portions of them, long prior to the title claimed by their co-defendants. The cross bills were dismissed, and an appeal taken to the supreme court by the parties who filed them. The court held that the decree upon the cross bill was not final, and dismissed the appeal. Mr. Justice Nelson, speaking for the court, said:

"A cross bill is brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. It is brought either to obtain a discovery of facts in aid of the defense to the original bill, or to obtain full and complete relief to all parties as to the matters charged in the original bill. It should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject-matter of an original and independent suit. The cross bill is auxiliary to the proceedings in the original suit, and a dependency upon it. It is said by Lord Hardwick that both the original and cross bill constitute but one suit, so intimately are they connected together. Field v. Schieffelin, 7 Johns. Ch. 253. * * * It is manifest from this brief reference to the doctrine that any decision or decree in the proceedings upon the said cross bill is not a final decree in the suit, and therefore not the subject of an appeal to this court, under the 22d section of the judiciary act. The decree, whether maintaining or dismissing the bill, disposes of a proceeding simply incidental to the principal matter in litigation, and can only be reviewed on an appeal from the final decree disposing of the whole case. That appeal brings up all the proceedings for re-examination when the party aggrieved by any determination in respect to the cross bill has the opportunity to review it, as in the case of any other interlocutory proceeding in the case."

In referring to the cross bill in that case, the court said "that the matters sought to be brought into the controversy between the complainants in that and their co-defendants do not seem to have any connection with the matters in controversy with the complainants in the original bill." In other words, the matter in the cross bill was not germane to any matter in controversy in the original bill, and no final decree could be entered upon it disposing of the whole case.

In Ex parte Railroad Company, supra, the original bill was filed by the complainant to foreclose a mortgage on the property of a railroad company. The complainant held bonds secured by a mortgage on which the company had defaulted in the payment of interest. Afterwards the holder of a prior mortgage was admitted as a defendant, and filed an answer and a cross bill. The cross bill prayed for the sale of the mortgaged property for the purpose of paying the prior debt. Thereupon the holders of certain statutory securities intermediate in time brought another suit to enforce their liens, making all the parties to the original suit parties to the second suit. In the original suit the court entered a decree in favor of the complainant in the cross bill, and also entered a decree in both suits directing the sale of the property and the application of the proceeds to the payment of the claim of the cross complainant, in preference to that of the other mortgage creditors. From these decrees appeals were taken to the supreme court, and a bond for supersedeas filed. The next day after these appeals were taken, the court again considered the cause, and entered a decree in both suits, consolidated for that purpose, settling the equities of the parties, other than the cross complainant, ordering a sale of the property subject to the lien of the cross complainant, and directing that the purchaser take title subject to such lien as the same might be finally adjudged and determined. The cross complainant appeared, and prayed an appeal from the decree, to operate as a supersedeas upon the filing of the necessary bond, but the court refused to grant the appeal or accept a bond. Thereupon the cross complainant applied to the supreme court for a mandamus requiring the circuit court to grant the appeal, and accept a good and sufficient supersedeas bond. The court granted the writ directing the circuit court to allow the appeal and accept a supersedeas bond. In the opinion delivered by Mr. Chief Justice Waite, the decision in Ayres v. Carver is cited as authority, to the effect that any decision or decree in the proceedings upon the cross bill is not a final decree in the suit, and not the subject of an appeal to the supreme court, but the learned judge adds that "a cross bill must grow out of the matters alleged in the original bill, and is used to bring the whole dispute before the court, so that there may be a complete decree touching the subject-matter of the action." In the case before the court the cross bill had this object in view, but the decree entered upon it was not a complete determination of all the controversies involved in the original bill, and hence it was not a final decree.

In Holgate v. Eaton, 116 U. S. 33, 6 Sup. Ct. 224, the controversy was of such a character that the prevailing equities were found in

favor of the complainants in the cross bill, and the substantial effect of a complete determination of all the controversies in the case was the entry of a final decree upon that bill. Practically the same result was reached in Peay v. Schenck, Woolw. 175, 21 Fed. Cas. 667, 672; Lowenstein v. Glidewell, 5 Dill. 325, 15 Fed. Cas. 1027; Markell v. Kasson, 31 Fed. 104; Jesup v. Railroad Co., 43 Fed. 483; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 26 C. C. A. 389, 81 Fed. 261. From these authorities it certainly appears as the established doctrine that where a cross bill seeks affirmative equitable relief with respect to matters germane to the original suit, and the controversy has taken such a shape that a complete and final determination of the whole case as to all parties to the original suit may be had upon the lines of the cross bill, then a final decree may be entered upon that bill.

This brings us to the inquiry, in the present case, whether there is in the decree of July 3, 1897, a complete and final determination of all the controversies involved in the original cause. In complainants' second amended and supplemental bill the allegations of the original bill are repeated; among others, the allegation that the complainants were the owners, as tenants in common with each other, of the lands in controversy. The bill further alleges that, at and before the time of the death of Thomas H. Blythe, he was the owner in fee, and seised and possessed, of the real property described in the bill; that the complainants and one Boswell M. Blythe were the next of kin and heirs at law of the said Thomas H. Blythe, deceased; that the complainant John W. Blythe was the assignee of Elizabeth Shelton and William S. Blythe, next of kin and heirs at law of said Thomas H. Blythe, deceased, and, as such assignee, he owned the interest to which they would have been entitled in the estate of Thomas H. Blythe, and were entitled to take and have by succession, and they did take by succession, the estate of Thomas H. Blythe, deceased, and they were the owners in fee of the real property described and entitled to the possession thereof. To this second amended and supplemental bill the Blythe Company interposed an answer, in which it denied that the complainants, or either of them, or Elizabeth Shelton or William S. Blythe, were the next of kin or heirs at law of Thomas H. Blythe, deceased, and denied that the complainants were the owners of the property in controversy, but alleged that certain other persons named were at the time of the death of Thomas H. Blythe his next of kin, and were collectively his only heirs at law, and, as such, were, under the laws of the state of California then existing and in force in said state, entitled to, and did, succeed to the entire estate and property of said Thomas H. Blythe upon his death, and that all the right, title, interest, succession, and estate of such persons had been granted, sold, conveyed, and confirmed to the Blythe Company. Here was a controversy between the complainants and this defendant involving the whole question at issue. The complainants might succeed in the action against the defendant Florence Blythe Hinckley, and still be defeated by the Blythe Company. By the stipulation of the attorney for the Blythe Company,

dated March 4, 1897, the complainants were not required to file their replication to the answer of the Blythe Company until the expiration of 10 days after notice that the same was required. No replication has been filed, and, so far as the records show, none has been required. The controversy between the complainant and the Blythe Company to the second amended and supplemental bill was therefore not at issue when the decree of July 3, 1897, was entered. It is true this decree disposes of the adverse claim and interest of the complainants to the property in dispute upon the issues of the cross complaint, but the fact remains that the legal ownership of the property by reason of being next of kin to Thomas H. Blythe, deceased, was still a subject of controversy between these parties to the original and second amended and supplemental bill, to be determined on its merits, and, so far as that bill was concerned, was undetermined at the date of the decree.

The controversy between the complainants and the defendant Florence Blythe Hinckley was also left undetermined by the decree. Her motion to dismiss the entire suit had been elaborately argued and submitted, and the last brief had been filed as late as May 22, 1897. Here was a motion that involved the question of the jurisdiction of the court over the parties and the subject-matter. The cross bill, being dependent upon the proceedings in the original suit, was subject to whatever disposition might be made of the question of jurisdiction. Dows v. City of Chicago, 11 Wall. 108, 112. In this state of the cause as to the general subject of controversy, it is difficult to see how a complete and final decree upon the whole case could be entered on the cross bill; but still further difficulties are encountered in the way of such a disposition of the case when we come to examine the issues in detail. The principal subject of controversy is the valuable real estate left by Thomas H. Blythe, and situated in San Francisco, but this is not all. It appears that there was in the hands of the public administrator, at the close of the administration, the sum of $89,842.94, being the accrued rents of the real property. By the decree of January 18, 1896, the superior court distributed this sum to the defendant Florence, as the residue of the estate. The complainants appear to claim this sum as rents and profits, but whether, under the decree, the Blythe Company is entitled to it, is not so clear. In any event, a reference to the master for an accounting would be necessary, and some directions required. Here, then, is a question left open for the future judgment of the court, and to this extent the decree is incomplete. Beebe v. Russel, 19 How. 285; Iron Co. v. Martin. 132 U. S. 93, 10 Sup. Ct. 32; Lodge v. Twell, 135 U. S. 235, 10 Sup. Ct. 745; Latta v. Kilbourn, 150 U. S. 524, 14 Sup. Ct. 201.

In the original bill, Frederick W. Hinckley, the husband of the defendant Florence, was a party defendant. He was also joined as a defendant in the amended bill, and in the second amended and supplemental bill. He was also referred to in the answer of the Blythe Company. In the cross bill it is alleged that he had died since the 1st day of February, 1897. In the decree it is recited that he had

died since the commencement of the suit. It is contended in support of the decree that Frederick W. Hinckley had no other interest in the property other than that of husband to the defendant Florence, and that, therefore, the recital in the decree is sufficient. This would undoubtedly be correct if the cross bill had contained an allegation to that effect, but it does not, and the court is not at liberty to supply the omission by such a construction of the decree. These undetermined questions fix the character of the decree. It was not complete and final in the sense in which such a decree is recognized under the established rules of practice in the courts of the United States. It was clearly an interlocutory decree, and, as such, is subject to the control of the court, and may be reconsidered and modified or set aside at any time prior to the entry of the final decree. Fourniquet v. Perkins, 16 How. 82, 84; Kilbourn v. Latta, 150 U. S. 540, 14 Sup. Ct. 201. Whether the court will set aside such a decree depends upon the proceedings and the merits of the application. In this case it is contended, in support of the motion and petition to set aside and vacate the decree, that there was no service of subpoena on the defendant Florence, and therefore the court had no power to enter the decree; in any event, that the proceedings which resulted in the decree were of such an irregular character as to justify the court in opening the default.

Under Equity Rule 13 the service of subpoena is required to be made as follows:

"The service of all subpoenas shall be by delivery of a copy thereof by the officer serving the same to the defendant personally, or by leaving a copy thereof at the dwelling-house or usual place of abode of each defendant with some adult person who is a member or resident in the family."

The subpoena issued upon the cross bill has this return by the marshal:

"I hereby certify that I received the within writ on the first day of March, 1897, and personally served the same on the first day of March, 1897, on Florence Blythe Hinckley, by delivering to and leaving with Mrs. Harry Hinckley, an adult person, who is a resident in the place of the abode of Florence Blythe Hinckley, said defendant named therein, at the county of Alameda in said district, an attested copy thereof, at usual place of abode of said Florence Blythe Hinckley, one of the defendants herein."

It will be observed that the return does not show that Mrs. Harry Hinckley, to whom a copy of the subpoena was delivered, was a member or resident of the family of Florence Blythe Hinckley; and it is contended that this departure from the requirement of the rule is fatal to the service, and therefore renders the decree absolutely void. It appears that Mrs. Harry Hinckley is the wife of the brother of the deceased husband of the defendant Florence. The difference between leaving a copy of a subpoena at the dwelling house or usual place of abode of the defendant with some adult person who is a member or resident of the family of the defendant, and leaving it with a person who is a resident of the place of the abode of the defendant, is certainly very great, and might be very important. Take the case of a defendant living at one of our large hotels. A service such as is required by the rule would secure the delivery of the writ

to some person so related to or associated with the person to be served that the substituted service would practically be the equivalent of an actual personal service by the officer; but a service such as was made in this case might be made by the delivery of the writ to an entire stranger, or to some indifferent or ignorant servant residing in the hotel, with no probability whatever that it would reach the party for whom it was intended. White v. Primm, 36 Ill. 418. Clearly, the rule is not complied with by any such service. Harris v. Hardeman, 14 How. 334. But it is said that the return of the marshal is that he has made personal service of the subpoena on Florence Blythe Hinckley, and that, as there is nothing in his certificate as to the method of making the service inconsistent with this return, a good and sufficient service will be presumed. It is also further contended that, if the return is defective in this respect, the defect has been cured by the recital in the decree that the subpoena "had been duly and regularly served within the Northern district of California upon the respondent in said cross bill of complaint." The doctrine here invoked to support the decree would be applicable if the decree were now being subjected to a collateral attack. In such a proceeding every intendment would be indulged in support of the decree, and whatever appeared in the record as having been done would be presumed to have been rightfully done. But this doctrine does not control the discretion of the court in opening a decree obtained by default for the purpose of permitting a defense on the merits. Indeed, it has been held "that a meritorious defense and a reasonable degree of diligence in making it are all that it is necessary to establish, in order to justify the setting aside of an interlocutory judgment." Adams v. Hickman, 43 Mo. 168. It will not be necessary, therefore, to review in detail all the objections that have been made to the subpoena, the return that has been made upon it, and generally to the irregularity of the proceedings. It will be sufficient, for the present purpose, to say that it is contended very earnestly that the proceedings have been so irregular and defective that when the decree was entered on July 3, 1897, no jurisdiction had been obtained by the court over the defendant Florence in the action on the cross bill. And in this connection it is pointed out that the subpoena was served on March 1, 1897, and the return made on March 2, 1897; that the certificate recites that Mrs. Harry Hinckley "is a resident," etc.; that this recital relates only to her residence on March 2, 1897, and not what it was on the day the subpoena was served; that it does not appear from the return that Mrs. Harry Hinckley was ever a resident in the usual place of abode of the defendant Florence; that the service was not made at the required place; and, finally, that the subpoena was dated February 16, 1896; that in the memorandum at the bottom of the subpoena, required by Equity Rule 12, the defendant was notified that she must appear "on or before the first Monday of April next, at the clerk's office of said court, pursuant to said bill, otherwise the said bill will be taken pro confesso"; that this requirement, considered with respect to the date of the subpoena, was that she should appear on or before the first

Monday of April, 1896, and as the service of the subpœna was made on the first of March, 1897, she was upon the face of the writ required to make an impossible appearance.

If the court is limited in its inquiry to the subpœna and its return, it is difficult to see how it can find that the requirements of the rules as to the service of process have been followed with such precision in obtaining jurisdiction over the defendant that it would be justified in refusing to set aside the decree. But in support of these objections a number of affidavits of the defendant Florence and others have been filed, relating to her residence at about the time of the service of the subpœna, from which it appears that about January 1, 1896, the defendant and her husband rented the house No. 1221 California street, in San Francisco, for the term of two years; that they resided at the house until February 6, 1897, when Frederick W. Hinckley died, at Portland, Or.; that the funeral took place February 9, 1897, at which date, and after the funeral, the defendant Florence visited Mrs. Harry Hinckley at the former residence of George W. Grayson, the father of Mrs. Harry Hinckley, at the corner of Ninth and Madison streets, in the city of Oakland; that she spent her nights there until after March 1, 1897; that between the 9th of February, 1897, and the 5th day of March, 1897, defendant was more or less at the house No. 1221 California street, where she kept her servants, and took many of her meals, and received visits from her physicians and friends; that she retained possession and paid the rent of the house No. 1221 California street until May 1, 1897. The affidavits enter into considerable detail concerning the movements of the defendant Florence between the dates mentioned, but enough has been stated to show that she had a residence in San Francisco from some time in January, 1896, down to the death of her husband, on February 6, 1897, and that she claimed a residence at the same place down to May 1, 1897. The service of the subpœna referred to in the return of the marshal was made by leaving a copy of it with Mrs. Harry Hinckley, at the house of George W. Grayson, in Oakland, on March 1, 1897. The affidavits of the defendants Florence, Harry G. Hinckley, Mary Grayson Hinckley (Mrs. Harry G. Hinckley), Robert R. Grayson, and George W. Grayson specifically deny that the Grayson house was ever the residence or usual place of abode of the defendant Florence. A number of counter affidavits were filed, from which it appears that Mr. and Mrs. Harry G. Hinckley resided at the Grayson house from about November, 1896, to May 1, 1897; that the defendant Florence attended the funeral of her husband, Frederick W. Hinckley, on February 9, 1897, riding in her own carriage, but with horses furnished by a livery stable in San Francisco; that after the funeral she was driven to the Grayson house, the carriage placed in a livery stable in Oakland, and the horses returned to San Francisco; that thereafter, and until some time in April, 1897, the carriage remained in Oakland, subject to the call and use of the defendant, with horses furnished by the Oakland livery stable. It is also alleged by one Charles Bone, upon information, obtained by inquiry, that the Grayson house was the usual

84 F.—16

place of abode of the defendant Florence. The affidavit of the deputy marshal who served the subpœna has also been introduced, from which it appears that he called at the Grayson house, at Ninth and Madison streets, in Oakland, on the 1st day of March, 1897, and asked for Mrs. Hinckley. The lady who responded said she was Mrs. Hinckley. The deputy marshal then said: "You are Mrs. Harry Hinckley. I want to see Mrs. F. B. Hinckley." Her reply was that "Mrs. F. B. Hinckley could not be seen." The deputy marshal then asked if Mrs. F. B. Hinckley was stopping at the house, to which the lady replied, "She is stopping here temporarily." He then asked her, "Is she here at the house now?" She said, "Yes." He then asked her, "Does she sleep here?" She said, "Yes." The deputy marshal then explained that he had a subpœna in equity to serve upon Mrs. F. B. Hinckley, and wanted to see her personally. The lady replied in a positive manner that "he could not see her." He then handed Mrs. Harry Hinckley a copy of the subpœna, who said she did not want to have anything to do with it. The deputy marshal said that he was satisfied that Mrs. F. B. Hinckley was living at the house, and he would leave the subpœna with her (Mrs. Harry Hinckley). She took the subpœna, and the deputy marshal said, "A delivery of the subpœna to you will be a service of it on Mrs. F. B. Hinckley." The conclusion drawn from these affidavits is that the defendant Florence was temporarily residing at the Grayson house, in Oakland, at the time the copy of the subpœna was left with Mrs. Harry. G. Hinckley, but her permanent residence and abode had been for more than a year, and was then, at No. 1221 California street, in San Francisco. The substituted service was therefore not within the requirement of Equity Rule 13.

But it is contended in support of the decree that, even if it be determined that the subpœna was insufficient, and that no service was made upon the defendant Florence, still, by her own showing, she voluntarily appeared to the cross complaint by counsel, on March 22, 1897; that she was thereby charged with notice of the subsequent proceedings, and is therefore bound by the decree. Jones v. Andrews, 10 Wall. 327. This contention is based upon an order of the court alleged to have been made on March 22, 1897. The order is not found upon the minutes of the court or among the records, but the evidence that it was made is contained in certain affidavits submitted by counsel for the defendant Florence upon the present motion. In an affidavit of William H. H. Hart, one of the counsel for the defendant Florence, he refers to the argument had in this court, on March 22, 1897, on the motion to dismiss the suit; and he alleges that his attention was at that time called by William Rix, Esq., to the fact that the Blythe Company had filed a cross complaint under the date of February 16, 1897, and that, out of abundance of caution, in open court, he asked the court for a further order that the defendant Florence should have the same time within which to appear to said cross complaint that had been previously granted upon the application of the defendant Florence in reference to the answer and cross complaint filed by the Blythe Company on February 1, 1897. The order referred to provided that no further appearance in respect to the pleading

filed by the Blythe Company need be entered by the defendant Florence Blythe Hinckley until 10 days after her solicitor should be served with written notice of the decision of the court upon her motion respecting such pleading, and then only if said motion should not be sustained. The affidavit of William Rix corroborates the statement of Mr. Hart, and adds that the court granted the order. The affidavit of W. A. Kirkwood is to the effect that for over two years he had been connected with the office of William H. H. Hart, and during that time had to a large extent had charge of the business of obtaining orders in connection with suits in which Mr. Hart had been engaged; that he was present in court on March 22, 1897, and heard Hart mention to the court that, in an order previously granted, the defendant Florence had been given 10 days, after notice of the decision of a motion that had been made in relation to a pleading in the case filed by the Blythe Company, in which to appear to said pleading, and to plead to the same; that Hart asked that the order be made to apply to the cross complaint, and the order was granted by the court. In a second affidavit filed by Mr. Hart he again refers to the application to the court on March 22, 1897, for an extension of time for the defendant Florence to appear to the cross complaint, and alleges that the order was granted by the court. The fact that no minute or record of this application or order has been found raises a presumption that the application was not made, or, if made, was not granted. It is known that the court-room clerk of this court is attentive and accurate in recording the proceedings of the court, and it will be presumed that he performed his duty; but, on the other hand, the affidavits are direct and positive that an application was made to the court for an extension of time for the defendant Florence to appear to the cross bill filed February 16, 1897, and that the application was granted, and these affidavits have not been contradicted. Besides, it would not be unreasonable to expect that the cross bill would be found by counsel for the defendant among the papers in the case, in the course of the proceedings in court. The condition of the case and the situation of the parties were therefore favorable to just such action as it was claimed was taken on March 22, 1897; and, in view of the uncontradicted evidence that such action was taken, the court is disposed to accept it as an established fact, notwithstanding the strong contrary presumption in favor of the minutes of the court; but whether the defendant can claim any benefit from the terms of such an unrecorded order of the court under the circumstances of this case is not clear.

It is further contended in support of the decree that, admitting that such action was taken, all it amounts to is this: that the defendant Florence appeared in court by counsel at the date named, and by such appearance became subject to the jurisdiction of the court, and bound by its proceedings; that the rule taking the cross bill pro confesso against her, entered in the clerk's office on April 6, 1897, was a legal notice to her that the Blythe Company was proceeding under the rules to a decree upon that bill. There is much force in the argument

advanced in support of this position, but let us see what consequences legitimately follow from this contention.    If the statements contained in the affidavits are true, there was not merely an appearance on behalf of the defendant Florence to the cross bill of February 16, 1897, but an order of court extending her time to appear to that bill, which had not expired when the decree was entered on July 3, 1897. Under this order she was not subject to any proceeding against her on the cross bill until 10 days after the court had decided a pending motion in the case.    But it is said that her counsel neglected to have the order entered of record, and, as the Blythe Company had no notice of it, they were entitled to proceed with their case.    This would be true if, under the rules of practice, counsel were required to see that proceedings in court were properly recorded in the minutes; but this duty belongs to the officers of the court, and their default cannot be used to the prejudice of parties relying upon the integrity of official records.    In re Wight, 134 U. S. 136, 10 Sup. Ct. 487.    The most serious difficulty, however, in the way of maintaining the decree against the effect of an appearance by the defendant Florence, arises out of the fact that after the entry of the rule taking the cross bill pro confesso against her on April 6, 1897, the cross bill was twice amended, first by an order dated May 10, 1897, and again by an order dated July 3, 1897. It is true these amendments did not introduce new matter, but withdrew allegations respecting property in another judicial district; struck out the name of Boswell M. Blythe, residing out of the district, and corrected a clerical error relating to the designation of the cross complainant as a defendant; but it is a general rule that any amendment of a bill, however trivial and unimportant, authorizes a defendant, after his appearance, to put in an answer making an entirely new defense, and contradicting his former answer, if one has been filed.    1 Daniell, Ch. Prac. (6th Am. Ed.) 409; 1 Fost. Fed. Prac. (2d Ed.) 280; French v. Hay, 22 Wall. 246; Nelson v. Eaton, 13 C. C. A. 523, 66 Fed. 376; Fisher v. Simon, 14 C. C. A. 443, 67 Fed. 387.    Moreover, the defendant Florence had an order of court, dated and duly entered on July 3, 1897, extending her time to appear in the case until after receiving 10 days' notice of the disposition of the motion to dismiss the amended and supplemental bill of complaint, as amended by the order of the court dated June 1, 1897, and then only in case said motion should be denied.    It is true this order applied to the amended supplemental bill, but the language of the order appears to cover more than this one pleading, and extend her appearance in the cause generally. Surely, the court will not be expected to give any narrow construction to its orders as against a default.

Referring now to the remaining preliminary objection interposed by the Blythe Company to this hearing,—that, by reason of the expiration of the term, the decree of July 3, 1897, had become final, and the Blythe Company dismissed from further attendance upon the court, and had not been brought into court by any order, writ, or process of the court,—I think it sufficiently appears from the proceedings to which reference has been made that the decree in question was not

final, and did not dispose of all the controversies which arose out of the matters charged in the original bill, and that, therefore, the Blythe Company has not been dismissed, but has continued in attendance upon the court to abide its final determination in the case.

It follows from these considerations that the court, in the exercise of a sound discretion, if not recognizing an absolute right, must set aside and vacate the decree of July 3, 1897, as far as it affects the interests of the defendant Florence.

With respect to the petition of the complainants to have the decree set aside so far as it affects them, many of the reasons that have operated in favor of the defendant Florence also obtain in their favor; but they advance other reasons in that behalf, which they contend place their petition on the grounds of an absolute right. By order of the court, the subpœna issued upon the cross bill was served upon their counsel in the case. They appeared specially by leave of the court, and, contesting this substituted service, submitted a motion to quash the subpœna. This motion was pending when the decree was entered. There was also a motion of the complainants pending to dismiss the suit as to the Blythe Company. It is contended that, while these motions were pending, no binding decree could be entered against them on the cross bill. This is certainly the general rule of equity practice, and no sufficient reason appears why it should not be applied in this case. The decree will therefore be reversed as to all parties upon the payment of costs by the defendant Florence Blythe Hinckley.

## Motion to Correct Minutes.

After the entry of the decree of July 3, 1897, the court, then being in the March term, adjourned sine die. The succeeding or July term commenced on Monday, July 12, 1897. When application was made to the judge of this court in chambers on July 7, 1897, by the solicitors for the defendant Florence Blythe Hinckley, and by the solicitor for the complainants John W. and Henry T. Blythe, to vacate and set aside the decree of July 3, 1897, the circuit court was reopened in the March term, in accordance with an order reciting that, good and sufficient reasons appearing therefor, the order of adjournment of the court sine die, entered on July 3, 1897, was ordered vacated and set aside, and the court was thereupon opened for the transaction of business. The business transacted consisted in the entry of an order permitting the defendant Florence Blythe Hinckley to file her petition and affidavits in the matter of the application to set aside the decree of July 3, 1897; and the hearing of the same continued until the first day of the next term, and a like order was entered for and on behalf of the complainants. The attorney for the Blythe Company has moved to correct the minutes of the court by expunging therefrom this record and the entries relating thereto of the date of July 7, 1897, on the ground that after the court had adjourned for the term, on July 3, 1897, it had no power or authority to reconvene

or reopen for the transaction of business prior to the day fixed by law for the commencement of the next term, except in special or adjourned session, in the manner provided by sections 664 and 672 of the Revised Statutes, a method not pursued by the court on this occasion. The business transacted on July 7, 1897, consisted merely in permitting the parties to file certain papers with the clerk of the court, and continuing the hearing of the same until the first day of the next term. If permission was required for the filing of these papers, it could have been obtained as well from the judge in chambers, and the hearing, in any event, could have been set down for the first day of the next term. The business transacted by the court on July 7, 1897, was therefore without any legal significance or controlling effect; and, as it does not appear to have in any way prejudiced any right of the Blythe Company, the motion will be denied.